**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

EVERT SOFTWARE, INC.,

Plaintiff,

v.

EXTREME RECOVERIES, INC. and ANNE SAVITSKI,

Defendants.

Civil No. 01-1027 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

---

Thomas J. Shroyer and H. Le Phan, MOSS & BARNETT, P.A., 4800 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, 55402, for plaintiff.

Douglas J. Williams and Matthew J. Goggin, MERCHANT & GOULD, P.C., 3200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for defendants.

Evert Software, Inc. ("ESI") brings this lawsuit against defendants Anne Savitski and Extreme Recoveries, Inc. ("Extreme Recoveries") alleging copyright infringement for defendants' use of a computer program called "First Recovery." This matter is now before the Court on plaintiff's motion for a temporary restraining order. Plaintiff seeks an order prohibiting defendants from using and copying the First Recovery program.

FILED JUL 25 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

Because plaintiff has failed to carry its burden of proof on the *Dataphase* factors, its motion for a temporary restraining order is denied.

## BACKGROUND

Each of the parties in this case are former or current independent contractors for Howard Shultz and Associates ("HS&A"). HS&A is in the business of conducting accounts payable audits for businesses. Essentially, HS&A attempts to recover money for its clients that was either over paid or not realized during the accounts payable process. Auditing accounts payable consists of inspecting a client's purchasing, shipment and payment records to determine if the client was over billed, if it overpaid a vendor, or if it failed to claim an available credit or discount. Large retail businesses, such as Target and Wal-Mart, often conduct their own internal audits of accounts payable, and then hire outside firms, such as HS&A, to conduct a second audit in hopes of recovering additional overpayments or unapplied credits.

HS&A employs independent contractors to perform audit services for its clients. ESI was an independent contractor for HS&A, performing accounts payable audits for Target.[1] Anne Savitski became an HS&A associate in January 1994, and at that time began to work with Evert on the Target account. Evert, Savitski, and another HS&A auditor, Sylvester Boeckman, all worked out of the "Target Audit Center." The three contractors shared the costs and expenses associated with the Target Audit Center. An

[1] Initially, Harry Evert was an independent contractor for HS&A, beginning in 1976. In 1981, Evert incorporated his business and ESI rather than Evert began to act as the independent contractor for HS&A.

HS&A Payroll Account was opened by Evert into which the independent contractors made periodic payments based on the total claims that each billed in a particular month. As joint expenses for the Target Audit Center came due, checks were drawn on this account to pay the bills.[2] As additional HS&A associates joined the Target Audit Center over time, each was required to contribute to the HS&A Payroll Account.[3]

In 1996, Evert hired two computer programmers to develop an accounts payable auditing program that would assist the auditors in performing their work.[4] The two programmers, Tom O'Connor and Fred Noltie, developed the First Recovery software that is at issue in this case. The parties dispute the characterization of the way in which O'Connor and Noltie were paid. Defendants contend that the programmers were paid jointly by plaintiff and defendants out of the HS&A Payroll Account. Defendants also maintain that the parties and programmers understood that the new software program was for the use of all HS&A associates and was not the exclusive property of ESI or Harry Evert. Evert asserts that he was closely involved in developing the software and that he charged the other HS&A associates at the Target Audit Center a user fee for their use of

---

[2] ESI characterizes the HS&A Payroll Account differently. ESI claims that Evert set up "HS&A Payroll" as a sole proprietorship in 1994 and that the HS&A associates working out of the Target Audit Center paid the proprietorship for a share of the support staff expenses and computer equipment charges.

[3] The second defendant here, Extreme Recoveries, consists of some of these other HS&A associates working at the Target Audit Center.

[4] In the late 1980s, Evert had hired another computer programmer, Rich Welshinger, who developed a computer program called QBE to assist in the auditing process. Plaintiff maintains that the new programmers were hired in order to develop a more advanced program that would take advantage of numerous advances in database management technology. There is no claim in this case for copyright infringement as to the QBE software program.

First Recovery. ESI contends that the user fee was based on ESI's programming costs and was prorated based on the percentage of receipts claimed by each of the auditors. Plaintiff also claims that he and the programmers agreed that Evert or ESI would be the sole owners of the software program.

In June 2000, Evert terminated his relationship with HS&A effective July 31, 2000 in order to begin selling and marketing First Recovery.[5] After leaving HS&A, Evert attempted to negotiate the terms of a license agreement with HS&A for the continued use of the software. Evert alleges that the parties reached an oral agreement for the past use of First Recovery, but no written license agreement was ever signed. ESI was apparently never paid a license fee by HS&A. Plaintiff also asserts that HS&A told Evert that he should negotiate personally with the HS&A associates working at the Target Audit Center regarding any license for future use of First Recovery because the lease for the Audit Center and its computer equipment had been transferred to the HS&A associates.

Evert then demanded that defendants sign a licensing agreement for the continued use of First Recovery. Defendants refused to sign a licensing agreement and have continued to use the First Recovery software to perform accounts payable audits for Target. Plaintiff contends that defendants' continued use of the First Recovery software constitutes infringement of its exclusive copyright.

---

[5] O'Connor and Noltie assigned their rights in First Recovery to ESI after Evert left HS&A.

## DISCUSSION

ESI moves for a temporary restraining order enjoining defendants from using and copying First Recovery. Because plaintiff bears the burden of proof on a motion for a temporary restraining order and has not shown a sufficient likelihood of success on the merits or that the balance of harms strongly favors ESI, the motion is denied.

The standard for granting a temporary restraining order is outlined in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). The Court is to weigh four factors in determining whether to grant relief: (1) whether there is a substantial probability that the movant will prevail on the merits; (2) whether the harm to the movant outweighs any potential harm that granting an injunction may cause the nonmoving parties; (3) whether the moving party will suffer irreparable injury absent the injunction; and (4) the public interest. *Id.* at 114; *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1996). The plaintiff bears the burden of proof on all four factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### 1. Likelihood of Success on the Merits

The moving party must show substantial probability of success on the merits to warrant injunctive relief. *Dataphase*, 640 F.2d at 114. To ultimately succeed on its copyright infringement claim, plaintiff must demonstrate: (1) the ownership and validity of a copyright; and (2) violation of its exclusive rights granted under copyright law. *Pinkham v. Sara Lee*, 983 F.2d 824, 830 (8th Cir. 1992).

There appears to be no dispute that ESI has applied for copyright protection for First Recovery and that the programmers, Noltie and O'Connor, assigned their rights to ESI. The real dispute on the merits in this case is whether defendants have obtained a nonexclusive implied license to use the First Recovery software.[6]

The Copyright Act requires that a "transfer of copyright ownership" be made through a writing. 17 U.S.C. § 204(a). However, § 101 of the Copyright Act defines "transfer of copyright ownership" to include exclusive licenses, but expressly excludes nonexclusive licenses. As a result, "a nonexclusive license may be granted orally, or may even be implied from conduct." 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A], at 10-40 (1997); *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 831 (8th Cir. 1992) ("[u]nlike an exclusive license, an authorization can be given orally or implied from conduct"). An implied nonexclusive license does not transfer ownership of the copyright, but simply permits the use of a copyrighted work in a particular manner. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996). Proof of the existence of an implied license is an affirmative defense to a copyright infringement claim. *Id.* at 775. In addition, if the implied license is supported by consideration, it is deemed irrevocable. *Id.*; Nimmer on Copyright, § 10.03[a]. Courts have found that a nonexclusvive implied license arises when: (1) a person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work. *Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 879 (1997); *I.A.E.*, 74 F.3d at 776.

---

[6] Defendants also assert the affirmative defense of estoppel.

At this early stage of the proceedings, the Court cannot say that plaintiff has demonstrated a substantial probability that it will succeed on the merits. The parties vigorously dispute the facts surrounding the management arrangement of the Target Audit Center and the ownership of the HS&A Payroll Account. The resolution of these factual issues is critical to determining whether defendants have a nonexclusive implied license for First Recovery. If plaintiff and defendants indeed jointly hired and paid O'Connor and Noltie to develop First Recovery with the understanding that all of the HS&A auditors would have access to the software, there is a significant likelihood that defendants rather than plaintiff will prevail on the merits at trial. Given the current record before it, the Court cannot say that either party has demonstrated a strong likelihood of success on the merits. Because the burden of proof is on the plaintiff at this stage of the proceedings, the Court finds that this factor weighs against granting a temporary restraining order.

### 2. Threat of Irreparable Harm

Plaintiff must demonstrate that irreparable harm will result absent injunctive relief and that such harm will not be compensable by money damages. *Graham Webb Int'l v. Helene Curtis, Inc.*, 17 F. Supp. 2d 919, 924 (D. Minn. 1998). Plaintiff has the burden of demonstrating as a threshold issue that an injunction is necessary to prevent irreparable harm. *Baker Elec. Corp., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). The absence of such a showing alone is sufficient to deny a preliminary injunction. *Gelco*, 811 F.2d at 420. In copyright infringement cases, irreparable injury is presumed when

copyright infringement has been shown. *National Football League v. McBee & Bruno's Inc.*, 792 F.2d 726, 729 (8th Cir. 1986).

As discussed above, plaintiff has not yet shown that defendants are infringing plaintiff's exclusive copyright. Because plaintiff has not demonstrated that it is likely to succeed on the merits of its claim, the Court does not believe that the presumption of irreparable harm arises here. Beyond asserting this presumption, plaintiff has failed to show any actual irreparable injury that it will experience based on defendants' conduct. Moreover, plaintiff has not demonstrated why money damages would be an insufficient remedy if defendants are eventually found to be infringing. *Bloom v. O'Brien*, 841 F. Supp. 277, 279 (D. Minn. 1993) (explaining that to show irreparable harm plaintiff must show that harm is not compensable by money damages). Accordingly, this factor does not weigh in favor of granting a temporary restraining order.

### 3. Balance of Harms

*Dataphase* also requires that the Court balance the potential harm to ESI with the harm that would result to other litigants in the event an injunction is issued. *Dataphase*, 640 F.2d at 114. In order to justify temporary relief, the balance of harms must weigh decidedly in favor of the moving party. *General Mills, Inc., v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987).

Plaintiff argues that the balance of harms weighs heavily in favor of a temporary restraining order because defendants are willfully infringing its exclusive copyright. The Court disagrees. The potential harm to defendants if a temporary restraining order is

issued greatly outweighs the harm to plaintiff if defendants are permitted to continue using the First Recovery software during the pendency of this litigation.

Defendants have been using the First Recovery software with plaintiff's knowledge since it was developed sometime in approximately 1997. It has only been after plaintiff terminated his relationship with HS&A that he requested defendants execute a license agreement for the software. Defendants are now nearing the end of a six month accounts payable audit for Target.[7] They are required to complete the audit by July 31, 2001. If defendants are restrained from using First Recovery, it will be difficult, if not impossible for them to complete the Target audit and receive compensation for their work. Failure to complete the audit would no doubt damage defendants' relationship with HS&A as well as with Target and has the potential to put defendants out of business. As a result, the potential harm to defendants and their employees is significant. Plaintiff has articulated no equally serious harm that will occur absent injunctive relief. Plaintiff can continue to sell and market First Recovery. Further, in the event plaintiff eventually succeeds on the merits, it will be compensated for defendants' infringing use of the software. The third factor, therefore, also weighs against issuing a temporary restraining order.

**4. Public Interest**

Plaintiff argues that issuing a temporary restraining order in this case will serve the public interest by enforcing valid rights and promoting fair competition. However,

---

[7] Defendants conduct two six month audits for Target each year, one ending on July 31 and one on January 31.

the Court has yet to determine whether infringement has actually occurred. This factor does not weigh strongly in favor of either party.

## CONCLUSION

Having evaluated all of the *Dataphase* factors, the Court finds that plaintiff has failed to sustain its burden of demonstrating the need for a temporary restraining order. Given the current record before the Court, plaintiff has not shown a substantial likelihood of success on the merits or that the balance of harms strongly weighs in its favor. This is clearly a case involving serious factual disputes for which discovery must be completed before the copyright and ownership issues surrounding First Recovery can be resolved.[8] Plaintiff's motion for a temporary restraining order is denied.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for a temporary restraining order [Docket No. 4] is **DENIED.**

DATED: July 25, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

[8] The Court cautions that defendants may only continue to use the First Recovery software in connection with the Target audits, but in no way may alter the software or attempt to sell, copy, market or distribute the software, until further order of this Court.

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500